UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE SEPTEMBER 11, 2001 LITIGATION          **21 MC 97 (AKH)**
-----------------------------------------------------------x

IRENE M. GOLINSKI, Individually and as Personal
Representative of the Estate of RONALD F. GOLINSKI,
Deceased, and on behalf of all survivors of
RONALD F. GOLINSKI,                          **'07 CIV 8398**
        Plaintiff,
                                  Indiv. Case No. _____

v.                                           **COMPLAINT**
                                     *NUNC PRO TUNC*[1]

AMR CORPORATION;
AMERICAN AIRLINES, INC.;                     **JURY TRIAL DEMANDED**
ARGENBRIGHT SECURITY, INC.;
SECURICOR PLC;
METROPOLITAN WASHINGTON AIRPORTS AUTHORITY;
THE BOEING COMPANY;
AIRTRAN AIRWAYS, INC.;
ATLANTIC COAST AIRLINES;
CONTINENTAL AIRLINES, INC.;
DELTA AIRLINES, INC.;
NORTHWEST AIRLINES, INC.;
UNITED AIRLINES;
US AIRWAYS, INC.

        Defendants.
-----------------------------------------------------------x

RECEIVED SEP 2 7 2007 U.S.D.C. S.D.N.Y. CASHIERS

---

[1] Plaintiff, Irene M. Golinski, Individually and as Personal Representative of the Estate of RONALD F. GOLINSKI, Deceased, and on behalf of all survivors of RONALD F. GOLINSKI, files this Complaint pursuant to the August 1, 2006 and September 21, 2007 Orders by Hon. Alvin K. Hellerstein which ordered all plaintiffs to assert separate actions, filed *nunc pro tunc* as of September 10, 2003, the date of the original filing of a collective complaint filed by, *inter alia*, this plaintiff, Irene M. Golinski, Christine K. Fisher, Julia P. Shontere, and Shirley N. Willcher, Civil Case No. 2:03-cv-06966-AKH, and served *nunc pro tunc* as of the original service of process dates.

## COMPLAINT

### (GROUND VICTIM OF THE PENTAGON CRASH)

Plaintiff, IRENE M. GOLINSKI, Individually and as Personal Representative of the Estate of RONALD F. GOLINSKI, Deceased, and on behalf of all survivors of RONALD F. GOLINSKI, by her attorneys complaining of the Defendants herein, upon information and belief, respectfully states as and for their common liability allegations as follows:

### BACKGROUND

This action seeks damages on behalf of Plaintiff who suffered personal injuries and the heirs and next of kin of decedent, and the Estates of decedent for the wrongful death of Plaintiff who was killed as a result of the hijacking and crash of American Airlines Flight 77 (hereinafter "Flight 77") into the Pentagon in Arlington, Virginia on September 11, 2001. Flight 77 originated at Dulles International Airport, Virginia (hereinafter "Dulles Airport") and was bound for Los Angeles International Airport.

In sum, this action alleges that for several years prior to September 11, 2001, American Airlines and the other airline Defendants named herein, Argenbright and the other security company Defendant named herein, Boeing, and the Metropolitan Washington Airports Authority (hereinafter "MWAA") had actual knowledge of the fact that terrorist groups and individuals associated with them had publicly proclaimed a pathological hatred of the United States, its citizens and those who resided or traveled within or to its borders and vowed to kill Americans and to destroy American institutions and that airlines and airports were a likely target of their violence. The risk of harm to airline passengers, crew and persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft

2

was heightened by the fact that these Defendants had knowledge of dangerous long-standing flaws in airline and airport security, that commercial passenger aircraft were demonstrated to be vulnerable to attacks by persons intent upon causing death and injury in furtherance of their ideologies, and yet the Defendants failed to take reasonable action to protect passengers, crew and those on the ground or in buildings from harm in light of that knowledge and the risk presented.

These Defendants also knew or should have recognized what numerous evaluations disclosed; namely, that the airlines and airport security systems and those who implemented, operated and maintained them routinely failed to detect dangerous and deadly weapons capable of causing injury and death passing through so-called security checkpoints. These Defendants are jointly and severally liable for the wrongful deaths, injuries and damages resulting from the September 11 attacks because they were negligent, careless, wanton and reckless in failing to develop, implement, and maintain adequate airline and airport security systems at Dulles Airport, failed to implement reasonable and effective security measures prior to September 11, 2001 to deter and to prevent hijackers from carrying dangerous and deadly weapons aboard Flight 77 capable of causing injury and death, and failed to take the necessary measures to protect and secure the cockpit of Flight 77 from intrusion by terrorists who sought to gain control of the aircraft and cause it to crash.

Defendant Boeing, which is in the business of designing and manufacturing commercial air transport aircraft, was equally aware of the terrorist risks to civil aviation and failed to incorporate in its aircraft design structures and systems to prevent unauthorized and unlawful access to the cockpit of its aircraft.

3

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over all Defendants pursuant to the "Air Transportation Safety and Systems Stabilization Act," Pub.L. 107-42, 115 Stat. 230 (the "Act"), Sections 408(b)(1) and (3), which establishes that "[t]he United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."[2]

2.      Jurisdiction is also based upon supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, with respect to any claims forming part of the same case or controversy.

3.      The claims set forth herein were initially presented to MWAA in writing.

4.      Plaintiff has otherwise performed all conditions precedent to the bringing of this action, or the same have been waived by Defendants.

## THE PARTIES-PLAINTIFF

5.      Plaintiff IRENE M. GOLINSKI, being a resident citizen of the State of Maryland, is the surviving spouse of RONALD F. GOLINSKI, deceased, and the Personal Representative of his Estate. As such, in her own behalf and on behalf of decedent's Estate and the distributees thereof, Plaintiff brings this action against the Defendants named herein, for decedent's fatal injuries pursuant to the laws governing recovery of damages for wrongful death and for damages suffered by decedent's Estate.

6.      The decedent RONALD F. GOLINSKI was an occupant of the Pentagon on September 11, 2001 when Flight 77 crashed into it or thereafter while the risk of injury or death was still present.

---

[2]      Some actions may also be based upon diversity jurisdiction, 28 U.S.C. § 1332, in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. At the time of his September 11, 2001 death, decedent RONALD F. GOLINSKI was a resident citizen of the State of Maryland, and working in the Personnel Office at the Pentagon.

### "AMERICAN AIRLINES"

8. Defendant AMR Corporation (hereinafter "AMR") is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in Texas.

9. Defendant AMR is engaged in the business of air transportation of passengers for hire.

10. Defendant American Airlines, Inc. (hereinafter "American") is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in Texas.

11. Defendant American is a common carrier engaged in the business of transporting passengers by air and operates regularly scheduled flights from Dulles Airport and is responsible for the airline and airport security system at Dulles Airport.

12. Defendant AMR is the parent corporation of and exercised control over its wholly-owned subsidiary, Defendant American.

13. Defendant AMR, as the parent corporation of its wholly-owned subsidiary American, is liable for the negligent, reckless and wanton acts of American. (AMR and American are referred to collectively hereinafter as "American").

14. On September 11, 2001, American operated a Boeing 757-200 aircraft, registration No. N644AA ("the subject aircraft"), designated as Flight 77.

5

## **"OTHER AIRLINE DEFENDANTS"**

15.     Defendant AirTran Airways, Inc., (hereinafter "AirTran") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Florida.

16.     Defendant Atlantic Coast Airlines, (hereinafter "Atlantic Coast") is a corporation duly organized and existing under the laws of California and maintains its principal place of business in Virginia.

17.     Defendant Continental Airlines, Inc., (hereinafter "Continental") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Texas.

18.     Defendant Delta Air Lines, Inc., (hereinafter "Delta") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Georgia.

19.     Defendant Northwest Airlines Inc., (hereinafter "Northwest") is a corporation duly organized and existing under the laws of Minnesota and maintains its principal place of business in Minnesota.

20.     Defendant United Air Lines, Inc., (hereinafter "United") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Illinois.

21.     Defendant US Airways, Inc., (hereinafter "US Airways") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Virginia.

22.     Defendants AirTran, Atlantic Coast, Continental, Delta, Northwest, United, and US Airways (collectively hereinafter "the Other Airline Defendants") are common carriers engaged in the business of transporting passengers by air and operate regularly scheduled flights from Dulles Airport.

## "THE SECURITY COMPANY DEFENDANTS"

23.     Defendant Argenbright Security, Inc., (hereinafter "Argenbright") is a corporation duly organized and existing under the laws of Georgia and maintains its principal place of business in Georgia.

24.     Defendant Securicor PLC, (hereinafter "Securicor") is a foreign corporation organized and existing under the laws of the United Kingdom.

25.     Defendant Securicor is the parent corporation of and exercised control over its wholly-owned subsidiary, Defendant Argenbright.

26.     Defendant Securicor, as the parent corporation of its wholly-owned subsidiary Argenbright, is liable for the negligent, reckless and wanton acts of Argenbright.

27.     Argenbright and Securicor (hereinafter "the Security Company Defendants") were corporations engaged in the business of, and separately and collectively assumed responsibility for, implementing, developing, owning, operating, managing, maintaining and supervising airline and airport security for American for its flights departing from Dulles Airport, including Flight 77.

## "MWAA"

28.     Defendant Metropolitan Washington Airports Authority is an entity duly organized and existing under the laws of the District of Columbia and Virginia and maintains its principal place of business in the District of Columbia.

7

29.    On and prior to September 11, 2001, MWAA owned, operated, controlled, managed and maintained Dulles Airport and was responsible for airline and airport security for all flights departing from Dulles Airport.

### "THE BOEING DEFENDANT"

30.    Defendant The Boeing Company (hereinafter "Boeing") was and is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Illinois.

31.    Defendant Boeing is engaged in the business of designing and manufacturing aircraft to be used to transport passengers by common carriers such as American and others throughout the world.

32.    Defendant Boeing designed and manufactured the subject aircraft, including the subject cockpit environment, including the cockpit door and locking mechanisms.

### GENERAL ALLEGATIONS

33.    Prior to September 11, 2001, the Department of Transportation through its Federal Aviation Administration licensed American and the Other Airline Defendants as commercial air carriers authorized to transport passengers for hire, pursuant to which American and Other Airline Defendants had an obligation to comply with all federal statutes, rules, regulations, and environmental directives to achieve the highest level of airline and airport security to ensure that passengers, crew and those on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft were protected from harm as a result of a terrorist action.

34.    On and prior to September 11, 2001, American, the Other Airline Defendants, MWAA, and the Security Company Defendants, through their agents, servants, officers,

8

employees, designees and/or contractors, jointly and severally undertook and were required to develop, implement, own, operate, manage, supervise, staff, equip, maintain, control and/or oversee the airline and airport security system at Dulles Airport (including, but not limited to passenger screening, security checkpoint operations, pre-boarding passenger and luggage inspections, controlling access to secure areas and other security activities, ticketing purchase and check-in procedures and passenger identification and document checks for the subject aircraft and flight), to ensure the safety of persons traveling in air transportation and persons on the ground and in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft by persons engaged in acts of criminal violence, air piracy or terrorist activity.

35.    Prior to September 11, 2001, American, the Other Airline Defendants and MWAA entered into contractual relationships with the Security Company Defendants to provide security-screening services at Dulles Airport.

36.    On and prior to September 11, 2001, American, the Other Airline Defendants, the Security Company Defendants, and MWAA, by their respective officers, agents, employees, servants and/or representatives, separately and collectively, selected, hired, trained, instructed and supervised the security checkpoint screeners, metal detectors and x-ray machine monitors and others who operated, maintained and controlled the security checkpoints at Dulles Airport.

37.    Prior to September 11, 2001, regular meetings were held among American, the Other Airline Defendants, the Security Company Defendants, and MWAA during which airport security was discussed, and details about terrorist threats and potential security breaches were reviewed and discussed.

9

38.    On and prior to September 11, 2001, all Defendants, their agents, associates, and partners, and each of them, were the agent, servant, employee, assignee, successor in interest, or joint venturer of each other and were acting within the purpose or scope of such agency or employment; and all acts or omissions alleged herein of each Defendant were authorized, adopted, approved, or ratified by each of the other Defendants.

39.    All Defendants, and each of them, were fully informed of the actions of their agents and employees, and no officer, director, or managing agent of Defendants repudiated those actions, which failure to repudiate constituted adoption and approval of said actions and then all Defendants, and each of them, thereby ratified those actions.

40.    Prior to September 11, 2001, American, the Other Airline Defendants, the Security Company Defendants, and MWAA knew of the grave risk of attacks upon civil aviation generally, and commercial aircraft and airports. The Department of Transportation Inspector General, Federal Aviation Administration, Government Accounting Office and other independent and industry auditors repeatedly published information concerning terrorist threats to civil aviation. For example, in its 1999 annual report, *Criminal Acts Against Civil Aviation* (hereinafter "The 1999 Report"), the FAA's Office of Civil Aviation Security advised of potential dangers, including the identification of international terrorist Osama Bin Laden as a specific threat to hijack an airliner and target the United States:

> "Another threat to civil aviation is from Saudi terrorist financier Usama Bin Ladin....In a May, 1998 interview, Bin Ladin implied that he could use a shoulder-fired surface-to-air missile to shoot down a military passenger aircraft transporting U.S. military personnel. He reiterated that his attacks would not distinguish between U.S. civilians and military personnel. Moreover, an exiled Islamic leader in the United Kingdom proclaimed in August 1998 that Bin Ladin would 'bring down an airliner, or hijack an airliner to humiliate the United States.'"

The 1999 Report at 59.

The report also points to the 1994 Ramzi Yousef conspiracy to place explosive devices
on as many as twelve U.S. airliners flying out of the Far East as further evidence of the desire
and intent to attack U.S. commercial aircraft. Id.

In addition, threats that aircraft would be used as missiles and crashed into American
institutions were passed on to the FAA and American, the Other Airline Defendants, and other
commercial carriers:

> In January, 1995, a Philippine National Police raid turned up
> materials in a Manilla apartment indicating that three individuals –
> Ramzi Yousef, Abdul Murad and Khalid Shaykh Mohammed –
> planned, among other things, to crash an airplane into CIA
> headquarters....Information on the threat was passed to the FAA,
> which briefed U.S. and major foreign carriers.
>
>> Joint Inquiry Staff Statement, Part I, Eleanor Hill, Staff
>> Director, Joint Inquiry Staff, September 18, 2002, at p. 26.

In the 1999 Report, the FAA issued the following warning:

> "There is every reason to believe that civil aviation will continue to
> be an attractive target for terrorist groups....Increased awareness
> and vigilance are necessary to deter future incidents – be they from
> terrorists like Ramzi Yousef or non-terrorists bent on suicide, as
> occurred in Brazil in 1997. It is important to do the utmost to
> prevent such acts rather than to lower security measures by
> interpreting the statistics [which showed a decrease in incident
> between 1993 and 1998] as an indication of a decreased threat."

The 1999 Report at p. 59-60.

41.    Prior to September 11, 2001, the Defendants knew or should have known about
documented and reported numerous security breaches involving unauthorized access to secure
areas (including ramps and aircraft) and warnings that security was at risk and that passenger and
carry-on baggage screening systems were vulnerable; those reports detailed dangerous, long-
standing flaws and deficiencies in airport security and security devices and warned the

11

Defendants that their airline and airport security systems and devices were unsafe and needed significant improvements in staffing, training and equipment in order to ensure the safety of persons traveling in air transportation and persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft by persons engaged in acts of criminal violence, hijacking, terrorist activity, and air piracy.

42.    On and prior to September 11, 2001, American, the Other Airline Defendants, and MWAA knew or should have known that evaluations of the airline and airport security systems as they existed on September 11, 2001 revealed that said systems constituted a grave security risk; that the Security Company Defendants provided screening services which were inadequate and that such inadequacies posed severe dangers to its passengers, crew and persons on the ground or in buildings that the Security Company Defendants failed to adequately train its employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations.

43.    On September 11, 2001, five hijackers passed through the airline and airport security system at Dulles Airport, boarded Flight 77 and carried or obtained dangerous weapons capable of causing injury or death, including, but not limited to, box cutters, knives and/or razors.

44.    On September 11, 2001 at approximately 8:20 a.m., Flight 77 departed Dulles Airport with fifty-eight passengers, including the five hijackers, and six crewmembers.

45.    At some time after take-off and upon information and belief, five terrorists on board hijacked and commandeered the subject aircraft with the aid of dangerous and deadly weapons capable of causing injury or death, including, but not limited to, box cutters, knives and/or razors.

46.     Upon information and belief, the five individuals who hijacked Flight 77 have been identified as Khalid Al-Midhar, Majed Moqed, Nawaq Alhamzi, Salem Alhamzi, and Hani Hanjour (collectively referred to as the "hijackers") and were associated with or members of the Al Qaeda terror network led by Osama Bin Laden.

47.     At approximately 9:40 a.m., after the hijackers gained control, the subject aircraft crashed into the Pentagon killing all persons on board the subject aircraft, including decedents.

48.     As a result of the actions of the Defendants and the hijackers, Plaintiff and decedents were subjected to physical personal injuries, as well as pre-death pain and suffering, extreme emotional distress, extreme terror, and unremitting fear of impending death, as the case may be.

49.     As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under the applicable law.

## COUNT ONE

**CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH AND
SURVIVAL DAMAGES AGAINST AMERICAN, THE SECURITY COMPANY
DEFENDANTS, AND MWAA, BASED ON NEGLIGENCE, NEGLIGENCE PER SE,
RECKLESS CONDUCT AND CONSCIOUS DISREGARD FOR RIGHTS AND SAFETY**

50.     Plaintiff incorporates by reference all prior allegations in this Complaint.

51.     On and prior to September 11, 2001, American, the Security Company Defendants and MWAA, by their officers, agents, employees, servants or representatives, had an independent, joint and several, non-delegable duty to exercise and provide those on the ground or in buildings who might suffer death or injury as a result of improper or unauthorized operation of the aircraft with the highest level of security and care to safeguard Flight 77 and all other aircraft that operated at Dulles Airport to prevent hijackers from carrying dangerous and deadly weapons

13

capable of causing injury or death aboard aircraft or otherwise threaten the safety of passengers, crew or others on the ground or in buildings.

52.     The Defendants were jointly and severally required to secure Flight 77 from unreasonable dangers such as terrorist action aboard the aircraft, including hijacking, and to operate the subject aircraft in a manner which would not result in injury or death to its passengers, crew or others on the ground or in buildings.

53.     On and prior to September 11, 2001, American, and MWAA entered into contracts with the Security Company Defendants for security services for all flights departing from Dulles Airport. These Defendants had a duty to exercise the highest degree of care for the safety and security of all passengers and crew passing through security checkpoints at Dulles Airport and prior to boarding aircraft there, and in recognition of that duty, voluntarily entered into contracts with the Security Company Defendants to provide various airline and airport security services so as to secure from harm all passengers, crew and those persons on the ground or in buildings who might suffer injury or death from improper or unauthorized operation of an aircraft.

54.     By virtue of their negligence, the Security Company Defendants breached their contracts to provide effective security at Dulles Airport and to prevent security breaches which could cause injury or death to passengers, crew and persons on the ground or in buildings who might suffer injury or death from improper or unauthorized operation of an aircraft.

55.     On and prior to September 11, 2001, American, the Security Company Defendants, and MWAA, by their respective officers, agents, employees, servants and/or representatives, breached their duty to decedents and engaged in conduct which was reckless, negligent, negligent per se, wrongful, unlawful, careless, and willful and wanton in conscious

14

disregard of the rights and safety of the passengers, crew and others on the ground or in buildings

who might suffer injury or death as a result of improper or unauthorized operation of an aircraft

by violating applicable rules and regulations, including Federal Aviation Regulations; and further

by creating unreasonable dangers to Flight 77 passengers and crew in that American, the

Security Company Defendants, and MWAA:

> failed to implement, operate, maintain, supervise and control an adequate airline and airport security system that ensured the safety of and protected passengers, crew and others on the ground or in buildings who might suffer injury or death upon improper or unauthorized operation of an aircraft against acts of criminal violence, air piracy and terrorist activity;
>
> failed to adequately train, staff and equip Dulles Airport's airline and airport security system;
>
> failed to improve airline and airport security despite knowledge and prior warnings of numerous security breaches and lapses and terrorist threats to airline security;
>
> failed to properly screen the hijackers and allowed them aboard the subject aircraft with dangerous and deadly weapons capable of causing injury or death;
>
> violated proper security procedures, including FAA and internal airline/security guidelines and other security directives;
>
> failed to properly scrutinize the hijackers' tickets and identification documents;
>
> failed to properly monitor security checkpoints, x-ray machines and metal detectors;
>
> failed to install state of the art security equipment and systems to prevent hijacking and routinely failed to detect dangerous and deadly weapons capable of causing injury or death in undercover investigations;
>
> failed to adequately protect the subject aircraft's cockpit from unauthorized entry;

15

> failed to prevent the hijackers from entering the unprotected
> cockpit;
>
> failed to implement adequate safety and security measures to
> prevent hijacking;
>
> failed to equip the subject aircraft with a secure cockpit door and
> adequate locking mechanisms; and
>
> Defendants were otherwise negligent, engaged in conduct that was
> negligent per se, reckless, wrongful, unlawful, careless, and/or
> willful in conscious disregard for the rights and safety of others.

56.     As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and was caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and the decedent was forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

57.     As a direct and proximate result of the foregoing, the heirs and distributees of the decedent's estate, represented by the Plaintiff, were caused to sustain the loss of income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, suffered mental anguish and mental pain and suffering, and were caused to incur other necessary and reasonable expenses as a result of decedent's death, including, but not limited to, funeral and burial costs, and were otherwise damaged.

58.     As a direct and proximate result of the foregoing, the Plaintiff's decedent was caused to sustain severe and serious permanent injuries, grievous pain, agony and mental anguish, all prior to decedent's death, with no negligence on the part of the Plaintiff contributing thereto.

59.    As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

**COUNT TWO**

**CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST**
**THE OTHER AIRLINE DEFENDANTS BASED ON NEGLIGENCE**

60.    Plaintiff incorporates by reference all prior allegations in this Complaint.

61.    On and prior to September 11, 2001, the Other Airline Defendants had an independent and non-delegable duty to maintain the security of their aircraft at Dulles Airport. In recognition of that duty, the Other Airline Defendants subcontracted for security services to protect all flights departing from Dulles Airport.

62.    The Other Airline Defendants each had a duty or voluntarily undertook a duty through contracts with the Security Company Defendants to exercise the highest degree of care for the safety and security of all persons on the ground and in buildings who might suffer injury or death as a result of improper or unauthorized operation of Flight 77 and all other aircraft that operated at Dulles Airport.

63.    The Other Airline Defendants each knew or should have known that the security screening systems and services at Dulles Airport provided by the Security Company Defendants were grossly inadequate and posed a severe danger to their passengers, crew and other persons on the ground or in buildings.  The Other Airline Defendants knew or should have known that the security systems at Dulles Airport had been demonstrated to be like a sieve, frequently unable to detect dangerous and deadly weapons capable of causing injury or death in numerous evaluations.

17

64.    Each of the Other Airline Defendants knew or should have known that the Security Company Defendants failed to adequately train their employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations to detect even the most obvious of dangerous and deadly weapons capable of causing injury or death.

65.    The Other Airline Defendants' failure to remedy these known security lapses was a reckless, negligent and willful and wanton breach of their respective duties of care to all passengers and crew passing through Dulles Airport and boarding aircraft there as well as to persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft.

66.    The Other Airline Defendants' conduct was a proximate contributing factor to the cause of the Plaintiff's injuries, losses and damages.

67.    As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and was caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and the decedent was forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

68.    As a direct and proximate result of the foregoing, the heirs and distributees of the decedent's estate, represented by the Plaintiff, were caused to sustain the loss of income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, suffered mental anguish and mental pain and suffering, and were caused to incur other necessary and reasonable expenses as a result of decedent's death, including, but not limited to, funeral and burial costs, and were otherwise damaged.

69.     As a direct and proximate result of the foregoing, the Plaintiff's decedent was caused to sustain severe and serious permanent injuries, grievous pain, agony and mental anguish, all prior to decedent's death, with no negligence on the part of the Plaintiff contributing thereto.

70.     As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT THREE

## CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST AMERICAN AND MWAA BASED ON NEGLIGENT SELECTION

71.     Plaintiff incorporates by reference all prior allegations in this Complaint.

72.     American and MWAA failed to exercise reasonable care in the selection of a competent and careful security system contractor by employing the Security Company Defendants.

73.     The Security Company Defendants' work as security systems contractors at Dulles Airport presented a risk of physical harm and death unless skillfully and carefully performed commensurate with the threat of terrorist action.

74.     American and MWAA have a non-delegable duty to its passengers, its crewmembers, and persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft, including decedents, to provide competent and careful scrutiny of their terminal operations area and aircraft.

75.     The Security Company Defendants had a record of incompetent and careless operation and maintenance of their contracted security service obligations over many years

19

according to FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

76.     American and MWAA's conduct was a proximate contributing factor to the cause of the decedent's and Plaintiff's injuries and damages.

77.     As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and was caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and the decedents were forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

78.     As a direct and proximate result of the foregoing, the heirs and distributees of the decedent's estate, represented by the Plaintiff, were caused to sustain the loss of income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, suffered mental anguish and mental pain and suffering, and were caused to incur other necessary and reasonable expenses as a result of decedent's death, including, but not limited to, funeral and burial costs, and were otherwise damaged.

79.     As a direct and proximate result of the foregoing, the Plaintiff's decedent was caused to sustain severe and serious permanent injuries, grievous pain, agony and mental anguish, all prior to decedents' deaths, with no negligence on the part of the Plaintiff contributing thereto.

80.     As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

### COUNT FOUR

### CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH
### AND SURVIVAL DAMAGES
### RES IPSA LOQUITUR AGAINST ALL DEFENDANTS

81.     Plaintiff incorporates by reference all prior allegations in this Complaint.

82.     Defendants, and each of them, had exclusive management and control of the aircraft and airport security systems, through which the hijackers penetrated, and whose actions resulted in damages and death to Plaintiff's decedent. The penetration of the security system and Plaintiff's decedent's death as set forth above are such that in the ordinary course of events would not have occurred if Defendants had exercised ordinary care in the maintenance and operation of the security systems.     Because of the Defendants' exclusive control and management of the systems, Defendants are possessed of superior, if not exclusive, access to information concerning the precise cause of the incident, and Plaintiffs rely on the negligence of the Defendants, as inferred from the general circumstances alleged herein. The penetration of the security system was not due to any action or contribution on the part of the Plaintiff.

83.     As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and was caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and the decedent was forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

84.     As a direct and proximate result of the foregoing, the heirs and distributees of the decedent's estates, represented by the Plaintiff, were caused to sustain the loss of income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, suffered mental anguish and mental pain and suffering, and were

21

caused to incur other necessary and reasonable expenses as a result of decedent's death, including, but not limited to, funeral and burial costs, and were otherwise damaged.

85.     As a direct and proximate result of the foregoing, the Plaintiff's decedent was caused to sustain severe and serious permanent injuries, grievous pain, agony and mental anguish, all prior to decedent's death, with no negligence on the part of the Plaintiff contributing thereto.

86.     As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

### COUNT FIVE

**CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH**
**AND SURVIVAL DAMAGES**
**AGAINST DEFENDANT BOEING BASED ON STRICT TORT LIABILITY**

87.     Plaintiff incorporates by reference all prior allegations in this Complaint.

88.     The aforementioned subject aircraft was being used in an intended and foreseeable manner on the morning of September 11, 2001.

89.     Defendant Boeing defectively designed the cockpit or flight deck environment, including its door and accompanying locks of the subject aircraft. The design in use on September 11, 2001 of the subject aircraft was unreasonably dangerous in that it could easily be penetrated by a determined passenger. The cockpit door was not secure and the accompanying locks were insufficient to deter or prevent unauthorized or unlawful entry to thwart a hijacking attack. Alternative and safer designs were available for a nominal increase in cost which would have prevented these terrorists from gaining access to the cockpit on Flight 77.

90.    This defective design permitted the terrorists to gain access to the cockpit of Flight 77 and hijack the aircraft. Boeing's defective design was a proximate cause of the death of Plaintiff's decedent.

91.    As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and was caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and the decedent was forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

92.    As a direct and proximate result of the foregoing, the heirs and distributees of the decedent's estate, represented by the Plaintiff, were caused to sustain the loss of income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, suffered mental anguish and mental pain and suffering, and were caused to incur other necessary and reasonable expenses as a result of decedent's death, including, but not limited to, funeral and burial costs, and were otherwise damaged.

93.    As a direct and proximate result of the foregoing, the Plaintiff's decedent was caused to sustain severe and serious permanent injuries, grievous pain, agony and mental anguish, all prior to decedent's death, with no negligence on the part of the Plaintiff contributing thereto.

94.    As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

23

## COUNT SIX

### CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON NEGLIGENT DESIGN

95.     Plaintiff incorporates by reference all prior allegations in this Complaint.

96.     Defendant Boeing owed all passengers and crew who fly on its aircraft who might suffer injury or death as a result of improper or unauthorized operation of a Boeing aircraft, including decedents, a duty of care in safely designing the aircraft including a secure cockpit door and accompanying locks.

97.     Defendant Boeing recklessly and negligently breached its duty of care by failing to design the cockpit doors and accompanying locks to the subject aircraft in a manner which would prevent hijackers and/or other passengers from accessing the cockpit. The cockpit door on Flight 77 was not secure and the accompanying locks were insufficient to deter or prevent a hijacking.

98.     Defendant Boeing knew or should have known that the design of its cockpit door was defective. Defendant Boeing failed to remedy this defect. Defendant Boeing knew or should have known that alternative and safer designs were available for a nominal increase in cost which would have prevented the terrorists from entering the cockpit on Flight 77.

99.     The defective design permitted the terrorists to easily gain access to the Flight 77 cockpit on September 11, 2001 and was a proximate cause of the damages sustained by Plaintiff.

100.    As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and were caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and

24

the decedent was forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

101.    As a direct and proximate result of the foregoing, the heirs and distributees of the decedents' estate, represented by the Plaintiff, were caused to sustain the loss of income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, suffered mental anguish and mental pain and suffering, and were caused to incur other necessary and reasonable expenses as a result of decedent's death, including, but not limited to, funeral and burial costs, and were otherwise damaged.

102.    As a direct and proximate result of the foregoing, the Plaintiff's decedent was caused to sustain severe and serious permanent injuries, grievous pain, agony and mental anguish, all prior to decedent's death, with no negligence on the part of the Plaintiff contributing thereto.

103.    As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff are entitled to recover such damages to the extent allowed under applicable state law.

**COUNT SEVEN**

**CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH
AND SURVIVAL DAMAGES
AGAINST DEFENDANT BOEING BASED ON BREACH OF WARRANTY**

104.    Plaintiff incorporates by reference all prior allegations in this Complaint.

105.    Prior to September 11, 2001, Defendant Boeing expressly and/or impliedly warranted and represented that the subject aircraft and its component parts and systems, including, but not limited to, the subject aircraft's structure and airframe, including the subject aircraft's cockpit door, were airworthy, of merchantable quality, and/or fit and safe for the

purposes for which they were designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, and/or repaired, intended and used, and Defendant Boeing further warranted that the subject aircraft and its component parts and systems, including, but not limited to the subject aircraft's structure and airframe, including the subject aircraft's cockpit door, were free from all defects.

106.    Defendant Boeing breached said warranties in that the subject aircraft and its component parts and systems, including, but not limited to, the subject aircraft's structure and airframe, including the subject aircraft's cockpit door, were not airworthy, of merchantable quality, and/or fit and safe for the purposes for which they were designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, and/or repaired, intended and used and further were not free from all defects and said breach of warranties proximately caused the terrorist hijacking, crash, and the damages sustained by Plaintiff.

107.    As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and was caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and the decedent was forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

108.    As a direct and proximate result of the foregoing, the heirs and distributees of the decedent's estate, represented by the Plaintiff, were caused to sustain the loss of income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, suffered mental anguish and mental pain and suffering, and were caused to incur other necessary and reasonable expenses as a result of decedent's death, including, but not limited to, funeral and burial costs, and were otherwise damaged.

109.    As a direct and proximate result of the foregoing, the Plaintiff's decedent was caused to sustain severe and serious permanent injuries, grievous pain, agony and mental anguish, all prior to decedent's death, with no negligence on the part of the Plaintiff contributing thereto.

110.    As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

**WHEREFORE**, the Plaintiff demands judgment against American Airlines, the Other Airline Defendants, the Security Company Defendants, Boeing, and MWAA for all damages to the extent allowed under applicable law.

**JURY DEMAND**

Plaintiff demands trial by a jury on all issues so triable.

Dated:  September 27, 2007

Marc S. Moller (MM-0143)
Kreindler & Kreindler LLP
100 Park Avenue
New York, NY 10017-5590
(212) 687-8181

Jonathan A. Azrael
Azrael, Gann and Franz, LLP
101 East Chesapeake Avenue, Fifth Floor
Baltimore, Maryland 21286
(410) 821-6800
(410) 821-1265 (Fax)

27